UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLEN KENNETH MASON,<br>    Plaintiff, | :<br>:<br>: |
| v. | : Case No. 3:20cv246(KAD) |
| SERGEANT BESSE, ET AL.,<br>    Defendants. | :<br>:<br>: |

# **INITIAL REVIEW ORDER**

Plaintiff, Allen Kenneth Mason, a pretrial detainee currently confined at Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut filed this civil rights complaint against Norwich Police Sergeants Besse and Rankin, Norwich Police Lieutenant Rykowski and Norwich Police Officers Krodel, Cannata, Dupointe and Meikle.  Mason asserts various claims arising from his arrests on October 12, 2019, October 26, 2019 and October 30, 2019.  For the reasons set forth below, the court dismisses the claims in the complaint with leave to amend three of the claims.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*  In undertaking this review, the court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of

Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

**Factual Allegations**

Mason was arrested by various members of the Norwich Police Department on October 12, 2019,[1] October 26, 2019 and October 30, 2019.  *See* Compl., ECF No. 1, at 4-6.  On October 26, 2019,[2] Sergeant Besse and Officers Krodel and Cannata, in response to a memorandum issued by Sergeant Besse, and as part of a conspiracy, stopped him for no apparent reason. *Id.* at 6-7.  Neither Sergeant Besse, nor Officer Krodel, nor Officer Cannata had probable cause to search or arrest Mason or to seize his truck and license plate. *Id.* at 5-6.

---

[1] The State of Connecticut Judicial Branch website reflects that on October 12, 2019, Norwich Police Officers arrested Mason and charged him with the following motor vehicle offenses: one count of improper use of a marker plate, license or registration; one count of illegal operation of motor vehicle while license or registration is under suspension; one count of illegal operation of a motor vehicle without minimum insurance; and one count of operating or parking an unregistered motor vehicle. He was also charged criminally with assault on a public safety officer in violation of C.G.S. §53a-167. *See* http://www.jud.ct.gov/judt.htm under Criminal/Motor Vehicle Case Look-up, Pending Case – By Docket Number using Case Numbers K21N-MV19-0201196-S; K21N CR 20-0161938- S. (Last visited April 22, 2020.)

[2] On October 26, 2019, Norwich Police Officers arrested Mason and charged him with the following motor vehicle offenses: one count of improper use of a marker plate, license or registration; two counts illegal operation of motor vehicle while license or registration is under suspension; and one count of illegal operation of a motor vehicle without minimum insurance. *See,* http://www.jud.ct.gov/judt.htm under Criminal/Motor Vehicle Case Look-up, Pending Case – By Docket Number using Case Number K21N-MV19-0201271-S. (Last visited April 22, 2020.)

On October 30, 2019,[3] at or near the Wequonnoc Apartments on North 5th Street in Taftville, Connecticut, Officers Krodel and Cannata tried to run Mason off the road by ramming his truck from behind and tasering Mason for no apparent reason.  *Id.* at 4.  Officers Krodel, Cannata, Meikle and Dupointe and Sergeant Rankin pointed their service weapons at Mason as he lay on the wet grass.  *Id.*

Officers Krodel and Cannata arrested Mason and transported him to the Norwich Police station.  At the station, officers placed Mason in a "below temp" cell without a blanket and confiscated his pants, shoes and shirt.  *Id.* at 4-5.  During his fourteen-hour confinement in the holding cell, officers neglected to provide Mason with any food.  *Id.*  At the time of his confinement, Mason suffered from kidney cancer.  *Id.*

**Discussion**

Mason lists three constitutional claims pursuant to 42 U.S.C. §1983.  He asserts that the defendants violated his right to due process under the Fourteenth Amendment, his right to be free from illegal search and seizure without probable cause under the Fourth Amendment and his right to be free from cruel and unusual punishment under the Eighth Amendment.  *Id.* at 4, 6.  In addition, Mason seeks to invoke the court's jurisdiction under 42 U.S.C. §§ 1981, 1982, 1985, 1986 and 1997 and the Racketeer Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.  *Id.* at 2.  Mason requests compensatory and punitive damages and an

---

[3] On October 30, 2019, Norwich police officers arrested Mason and charged him with the following six motor vehicle offenses: one count of improper use of a marker plate, license or registration; one count of illegal operation of motor vehicle while license or registration is under suspension; one count of passing in no passing zone; one count of reckless driving; one count of failure to drive on the right side of the road; and one count of illegal operation of a motor vehicle while under the influence of alcohol or drugs and charged him with the following three criminal offenses; one count of illegal possession of weapon in a motor vehicle; one count of interfering with an officer/resisting arrest; and one count of use or possession of drug paraphernalia. Information regarding these charges may be found at: http://www.jud.ct.gov/judt.htm under Criminal/Motor Vehicle Case Look-up, Pending Case – By Docket Number using Case Numbers K21N-MV19-0201272-S and K21N-

injunction directing the defendants to be retrained by attending two "Civil and Ethics" classes and to be demoted until they attend two lectures pertaining to the effects of racism on an individual's physical and emotional wellbeing. *Id.* at 8-9.

### October 12, 2019 Arrest

As a preliminary matter, the Court notes that although Mason states that Norwich police officers arrested him on October 12, 2019, he includes no specific facts or claim pertaining to the arrest. Notably, Mason has filed another case asserting claims in connection with his October 12, 2019 arrest. *See Mason v. Lax, et al.*, Case No. 20cv39(KAD). It does not appear therefore that Mason intended to base any of his claims in this matter on the October 12, 2019 arrest. However, even if such was his intent, these claims would be and are dismissed under the prior pending action doctrine. *See, Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)(A plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."); *Taylor v. Rodriguez,* 238 F.3d 188, 197 (2d Cir. 2001)(A district court may invoke its power to administer its docket by staying or dismissing a suit that is duplicative of another suit in federal court.); *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991)("the first suit [filed] should have priority.").

### Claims under RICO

Congress enacted RICO to address the unlawful activities of those individuals involved in organized crime in in the United States. *See Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 107 (2d Cir. 2001) ("RICO is a broadly worded statute that has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.") (internal quotation marks omitted). RICO is

CR19-0161392-S (Last Visited April 30, 2020).        4

directed at "'racketeering activity,' which i[s] define[d] as any act 'chargeable' under several generically described state criminal laws,[4] any act 'indictable' under numerous specific federal criminal provisions, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482-83 (1985) (quoting 18 U.S.C. § 1961(1)).  Section 1962 contains four subsections that set forth the criminal activities prohibited under RICO.  *See* 18 U.S.C. § 1962(a)-(d).  Section 1964, creates a private civil action for treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c).

"A private cause of action under RICO requires that the plaintiff allege: '(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'" *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 283 (2d Cir. 2006)).  To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.* 719 F.2d 5, 17 (2d Cir. 1983)).  To demonstrate a pattern of racketeering activity, a plaintiff must allege two or more predicate acts, as defined in 18 U.S.C. § 1961(1), that "pose a threat of continuous criminal activity" and are "related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (citation omitted).

In support of his civil RICO claim, Mason alleges that Officers "Racketeered Influenced

---

[4] The offenses under state law include "murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by

and Corrupt Organization to Direct Participation in this violation to conduct illegal constitutional violations by way of obstruction of the courts falsifying legal documents terrorizing the black community profiling me and others with no due process." Compl. at 7.  Even liberally construed, these allegations do not implicate the RICO statutes. First, allegations regarding constitutional violations and infliction of "terror" by the defendants do not meet the injury requirement of section 1964(c).  *See Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612–13 (S.D.N.Y. 2015) ("Personal damages, emotional damages, and physical damages, for example, are insufficient [to establish standing under RICO]. . . . Moreover, the deprivation of constitutional rights is a personal injury that is not protected by RICO.") (collecting cases). Furthermore, Mason has not alleged that the defendants were involved in an enterprise which affected interstate or foreign commerce or that they committed two or more of the federal or state law crimes included in the definition of "racketeering activity" set forth in 18 U.S.C. § 1961(1). Accordingly, the RICO claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

**Claims under 42 U.S.C. § 1997**

Mason next asserts claims under the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §§ 1997 *et seq.*  Section 1997a authorizes the Attorney General to initiate a civil action in federal court for equitable relief in response to allegations that a State or political subdivision of a State is "subjecting persons residing in or confined to an institution . . . to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing such person to suffer grievous harm. . . ."  42 U.S.C. § 1997a(a). In addition, under Section 1997c, the Attorney General may intervene in an action commenced "seeking relief from egregious or

---

imprisonment for more than one year." 18 U.S.C. § 1961(1).

flagrant conditions which deprive persons residing in institutions of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. . . ."

Insofar as the express language of 42 U.S.C. §§ 1997 et *seq.* authorizes the Attorney General to file suit, district courts have consistently held that the CRIPA does not provide an individual with a private right of action. *See Ross v. Aramark Corp.*, No. 18 CV 2246 (VB), 2019 WL 1172383, at *7 (S.D.N.Y. Mar. 13, 2019) (42 U.S.C. § 1997 *et seq.*, does not "create[]a private right of action") (citing *inter alia*, *Kee v. Hasty*, No. 01 CIV.2123(KMW)(DF), 2004 WL 807071, at *25 (S.D.N.Y. Apr. 14, 2004) ("Sections 1997a, 1997b and 1997c concern actions that may be brought by the Attorney General, and do not provide a private right of action")); *Sosa v. Lantz*, 660 F. Supp. 2d 283, 288 (D. Conn. 2009) (dismissing claims brought under 42 U.S.C. § 1997 *et seq.* because although "these statutes . . . permit the U.S. Attorney General to bring suit for constitutional deprivations to state prisoners . . . [they] … provide[] prisoners no substantive rights. . . ."); *McDonald v. Rivera*, No. 9:06CV410 (LEK/DEP), 2008 WL 268345, at *9–11 (N.D.N.Y. Jan. 30, 2008) (approving and adopting dismissal of claim of a violation of the Civil Rights of Institutionalized Persons Act of 1980, codified at 42 U.S.C. § 1997 *et seq.* on ground that "neither th[e] language [in section 1997c] nor any other portion of the statute evinces an intent by Congress to provide a private right of action to sue independently under the Act asserting constitutional deprivations which are fully redressable under 42 U.S .C. § 1983"). The court finds the reasoning of these cases persuasive. Accordingly, the claim asserted under 42 U.S.C. § 1997 *et seq* is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

**Claims under 42 U.S.C. § 1983**

Mason asserts several constitutional violations. He alleges that the defendants violated his Fourth Amendment rights in connection with his arrests on October 26, 2019 and on October 30, 2019 and the seizure of his truck on October 30, 2019.  He alleges that the defendants violated his right to due process under the Fourteenth Amendment when they pulled him over and arrested him because of the color of his skin.  Finally, Mason alleges that the conditions to which he was exposed at the Norwich Police Station for a fourteen-hour period and the force that the defendants and other officers used against him during his arrest or arrests violated his right to be free from cruel and unusual punishment under the Eighth Amendment.

### Eighth Amendment – Conditions of Confinement and Excessive Force

A claim of unconstitutional conditions of confinement based on the Eighth Amendment is available only to sentenced inmates, not to pretrial detainees or arrestees.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. . . . because, pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.") (internal quotation marks, brackets and citations omitted). Additionally, a claim of excessive force during an arrest is governed by the Fourth Amendment, rather than the Eighth Amendment.  *See Graham v. Connor,* 490 U.S. 386, 396 (1989) ("The validity of the claim [of excessive force] must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard.") (citing "*Tennessee v. Garner,* 471 U.S. 1, 7–22 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard). Accordingly, all

claims asserted under the Eighth Amendment of whatever nature are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

### Fourth Amendment

Mason alleges that on October 26, 2019 and on October 30, 2019, the defendants unlawfully stopped and searched his vehicle, searched and arrested him without probable cause and seized his truck without probable cause. Mason also alleges that the defendants used excessive force against him in connection with his arrest on October 30, 2019.

### Arrests, Searches and Seizures

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is "reasonableness." *Riley v. California*, 573 U.S. 373, 381-82 (2014) (internal quotation marks and citation omitted).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States,* 517 U.S. 806, 810 (1996). Traffic stops, therefore, must satisfy the Fourth Amendment's reasonableness limitation, which "requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Stewart*, 551 F.3d 187, 1919 (2d Cir. 2009)(alterations and emphasis omitted).

An arrest constitutes a seizure under the Fourth Amendment and is not reasonable unless

it is based on probable cause to believe that the individual has committed a crime. *Dunaway v. New York*, 442 U.S. 200, 213 (1979). The Fourth Amendment permits an arrest without a warrant when "the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (quoting *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007)).

"As a general matter, '[t]he reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations.'" *United States v. Lambus*, 897 F.3d 368, 402 (2d Cir. 2018) (quoting *Grady v. North Carolina*, 575 U.S. 306, 310 (2015)). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

The Fourth Amendment also protects against unreasonable seizures of property. *Soldal v. Cook Cty, Ill.*, 506 U.S. 56, 62 (1992). "A 'seizure' of property ... occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Id.* at 61 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "To determine whether a seizure is unreasonable, a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine whether the totality of the circumstances justified the

particular sort of seizure." *Carroll v. City of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (alterations omitted; citation omitted; internal quotation marks omitted).

Mason does not articulate the circumstances surrounding the traffic stops or the arrests on October 26, 2019 or October 30, 2019. Neither the location of the October 26, 2019 traffic stop and arrest, nor the officers or sergeants who may have been involved in the stop and the arrest is apparent from the allegations in the complaint. Although Mason appears to allege that October 30, 2019 traffic stop and arrest occurred at the Wequonnoc Village Apartments in Taftville, Connecticut, it is not clear which defendants were involved in the stop and/or the arrest and whether other officers may also have been involved but are not named as defendants. Mason offers no facts regarding the search and seizure of his truck or the search of himself or who might have been involved in the searches or seizure. Without these facts, Mason has not stated a plausible Fourth Amendment claims because without context, the reasonableness of the officers' conduct cannot be assessed. Accordingly, the court dismisses the Fourth Amendment detention, arrest, search and seizure claims without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

**Excessive Force**

Mason next alleges that on October 30, 2019, Officers Cannata and Krodel tried to run him off the road by ramming his truck from behind and tasering him for no apparent reason. He also alleges that Officers Krodel, Cannata, Meikle and Dupointe and Sergeant Rankin pointed their weapons at him as he lay on the grass. The test for determining whether a law enforcement official has used excessive force in violation of the Fourth Amendment at the time of an arrest requires a court to pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the

11

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. This test of objective reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Generally, merely brandishing or pointing a gun, absent aggravating circumstances such as a death threat, does not constitute excessive force in violation of the Fourth Amendment. *See Merrill v. Schell*, 279 F. Supp. 3d 438, 446 (W.D.N.Y. 2017) ("[T]he Second Circuit has never explicitly recognized an excessive-force claim in the absence of physical contact.... So threats alone, and brandishing weapons alone, do not clearly violate an arrestee's right."); *Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015) (collecting cases supporting proposition that "merely drawing" a weapon without firing it "does not constitute excessive force as a matter of law"). Mason allege no facts to suggest that any aggravating circumstances were present at the time that Sergeant Rankin and Officers Krodel, Cannata, Meikle and Dupointe drew and pointed their weapons at Mason. This claim of excessive force is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The allegations also fail to identify the circumstances that led Officers Cannata and Krodel to follow him or force him to pull off the road at the Wequonnoc Apartments or whether he attempted to resist or evade arrest after his truck had stopped. Absent such allegations, Mason has not plausibly alleged that the officers' actions were objectively unreasonable because their actions cannot be assessed without this context. Accordingly, the court dismisses the excessive force claims asserted against Officers Cannata and Krodel arising out of the October 30, 2019 arrest without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment – Conditions of Confinement**

The Second Circuit has recently observed that the Fourteenth and not the Fourth Amendment governs conditions of confinement claims asserted by an arrestee who has not yet been arraigned.  See *Shakir v. Stankye*, No. 18-242-CV, 2020 WL 1480141, at *3 (2d Cir. Mar. 24, 2020) (noting that conditions of confinement claims of a pre-arraignment arrestee should be treated as "arising under the Fourteenth Amendment") (citing *Darnell*, 849 F.3d at 20, 29; *Weyant v. Okst*, 101 F.3d 845, 856–57 (2d Cir. 1996).  There are two prongs to the standard governing a conditions of confinement claim under the Fourteenth Amendment.  See *Darnell*, 849 F.3d at 29.  Under the first prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). The second prong, also called "the *mens rea* prong, of [the] deliberate indifference [standard] is defined objectively." *Id.* at 35.  To meet the second prong of a Fourteenth Amendment conditions claim, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Id.*

Mason claims that he was locked up in a "below temp cell" without his pants, shoes or a shirt and did not receive a blanket or any food for fourteen hours.  At the time, he suffered from kidney cancer. He alleges that the defendants acted in a "deliberate fashion to cause me discomfort as a patient suffering with renal cell carcinoma kidney cancer." He asserts that the conditions made him uncomfortable and fearful and caused him mental anguish and misery.

Compl. at 4.

It is unclear whether Mason's claims relate to both the October 26th arrest and the October 30th arrest. Regardless, he does not indicate which defendants were present at the station and were aware of and responsible for subjecting him to the alleged uncomfortable conditions. As a result, the court cannot discern whether the conduct of any defendant constituted deliberate indifference to or reckless disregard of a serious risk of harm to Mason's health or safety. Thus, the court dismisses the Fourteenth Amendment conditions of confinement claims without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

### Fourteenth Amendment – Due Process

In addition to the conditions of confinement claims (construed as brought under the Fourteenth Amendment), Mason asserts a Fourteenth Amendment due process claim in connection with his arrests on October 26, and 30, 2019. He alleges that Sergeants Besse and Rankin and Officers Krodel, Cannata and Dupointe deprived him of "the minimum proper protocol pertaining to polic[]ing policy" when they stopped him for no apparent reason other than the color of his skin. Compl. at 6. As stated above, the claim that the defendants stopped, searched and arrested him without probable cause is covered by the Fourth Amendment. *See Whren,* 517 U.S. at 810; *Graham,* 490 U.S. at 394; *Dunaway*, 442 U.S. at 213. To the extent that Mason intended to assert a racial profiling claim, such a claim is more appropriately brought under the Equal Protection Clause of the Fourteenth Amendment. *See Gilbert v. Newton*, No. 3:13-CV-1715 JCH, 2015 WL 3755955, at *4 (D. Conn. June 15, 2015) ("[Plaintiffs'] claim that Newton engaged in racial profiling by pulling their vehicle over based on their race. Such a claim is best analyzed as a violation of the Equal Protection Clause.") (citation omitted).

The Fourteenth Amendment due process claim is therefore dismissed as futile and duplicative of the Fourth Amendment search and seizure claims and the Fourteenth Amendment equal protection claim.  *See* 28 U.S.C. § 1915A(b)(1).

### Fourteenth Amendment – Equal Protection

The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985).  A plaintiff may state a claim of intentional discrimination in violation of the Equal Protection Clause by identifying: (1) "a law or policy that expressly classifies persons on the basis of race[;]" (2) "a facially neutral law or policy that has been applied in an intentionally discriminatory manner[;]" or (3) "a facially neutral statute or policy [that] has an adverse effect and . . . was motivated by discriminatory animus."  *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) (citation omitted), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)).  A plaintiff is not required to plead that a "similarly situated group of individuals of a different race" were treated more favorably to "establish a claim of denial of equal protection" under these three theories.  *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001).

A plaintiff may also plead an equal protection violation under a selective enforcement theory.  To state a selective enforcement claim, a plaintiff must allege that: "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or

15

punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (citation omitted).

Mason alleges that the defendants pulled him over and arrested him on October 26, 2019 and on October 30, 2019 for no apparent reason other than that he was black and possibly due to a "minor infraction." Compl. at 5. As indicated above, however, Norwich Police officials arrested and charged Mason with multiple motor vehicle violations on October 26, 2019 and charged him with both motor vehicle and criminal offenses on October 30, 2019. There are no facts alleged which would support Mason's conclusory contention that the defendants acted intentionally and/or were motivated by racial animus. *See Buckner v. Shumlin*, No. 1:12-CV-90-JGM, 2013 WL 6571814, at *9–10 (D. Vt. Dec. 13, 2013) ("Despite alleging 'facts consistent with a discrimination claim[,]' Buckner's claim 'nevertheless stops short of the line between possibility and plausibility of entitlement to relief . . . because plaintiff[ ] do[es] not allege any facts supporting an inference of racial animus.'") (quoting *Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010)). Nor has Mason alleged that similarly situated, non-African American, individuals were treated differently so as to state a selective enforcement claim. As such, Mason's conclusory allegation that he was stopped, searched and arrested because he was black does not state a plausible Equal Protection claim. *See Hollins v. S. Burlington Police Dep't*, No. 2:18-CV-151, 2020 WL 1033335, at *7 (D. Vt. Mar. 3, 2020) ("In the absence of further factual allegations, Plaintiff's bare allegation [that police officers targeted him because of the color of his skin] does not plausibly give rise to a claim of racially motivated discrimination.") (citing *Garzon v. Jofaz Transp., Inc.*, No. 11-CV-5599, 2013 WL 783088, at *3 (E.D.N.Y. Mar. 1, 2013) (dismissing claim where allegations did "little more than cite to

[plaintiff's] mistreatment and ask the court to conclude that it must have been related to ... race")); *Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) (concluding plaintiff's "mere[] alleg[ations] that he is African–American, that [officer] engaged in certain actions, and that he would not have engaged in these actions if [plaintiff] were another race" were insufficient to "to raise a right to relief [under the Equal Protection Clause of the Fourteenth Amendment] above the speculative level"). Accordingly, the Fourteenth Amendment racial profiling claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Claims under 42 U.S.C. §§ 1981, 1982, 1985, 1986

Mason lists these federal statutes in the jurisdictional section of the complaint but does not otherwise refer to them in the body of the complaint or description of claims. He makes no effort to set forth any basis upon which a jury might conclude that these statutes were violated. The court therefore concludes that Mason has failed to plausibly allege claims under any of the four statutes and[5] the claims asserted under 42 U.S.C. §§ 1981, 1982, 1985, 1986 are dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

### ORDERS

In accordance with the foregoing, the court enters the following orders:

(1)   All allegations and claims arising from Mason's October 12, 2019 arrest; the claims asserted under 42 U.S.C. §§ 1981, 1982, 1985, 1986 and 1997; the RICO claim under 18 U.S.C. §§ 1961–1968; the Fourth Amendment claim of excessive force asserted against Sergeant Rankin and Officers Krodel, Cannata, Meikle and Dupointe for brandishing their weapons during

---

[5] Notwithstanding, the Court did undertake an examination of the allegations against the pleading requirements of each of these statutes. Aside from threadbare conclusory allegations regarding racial animus or conspiratorial plans, the Complaint fails to plausibly state any claim for which relief might be granted under any of the four statutes cited in the jurisdictional portion of the Complaint.

Mason's arrest on October 30, 2019, all Eighth Amendment claims, the Fourteenth Amendment due process claim; and the Fourteenth Amendment Equal Protection claim are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The following claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1): the Fourth Amendment detention, arrest, search and seizure claims; the Fourth Amendment use of force claims; and the Fourteenth Amendment conditions of confinement claim.

Mason may file an amended complaint on or before June 17, 2020 to assert factual allegations that some or all of the defendants unlawfully stopped, detained, searched and arrested him on October 26, 2019 and/or on October 30, 2019 in violation of the Fourth Amendment; that some or all of the defendants used excessive or unnecessary force against him during his arrests on one or both of those dates in violation of the Fourth Amendment, and that some or all of the defendants exposed him to unconstitutional conditions of confinement after one or both of the arrests in violation of the Fourteenth Amendment.  **Any amended complaint must set forth the facts that pertain to each arrest separately and must include specific facts regarding how each defendant was involved in the alleged constitutional violation.**

SO ORDERED at Bridgeport, Connecticut this 18th day of May 2020.

__/s/_____
Kari A. Dooley
United States District Judge