UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLEN KENNETH MASON,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:20cv246(KAD) |
| SERGEANT BESSE, ET AL.,<br>    Defendants. | :<br>:<br>: |

## RULING AND ORDER

In response to the court's December 14, 2020 order, Plaintiff Allen Kenneth Mason ("Mason") filed a Second Amended Complaint asserting claims against Norwich Police Officers Krodel and Cannata arising out of a traffic stop and arrest on October 30, 2019 in Taftville, Connecticut. For the reasons that follow, the Second Amended Complaint is dismissed, in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* In undertaking this review, the court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

**Factual Allegations**

On October 30, 2019, Mason's truck was parked at 35 Merchants Avenue in Taftville, Connecticut.  Second Am. Compl., ECF No. 19, at 1.  As he walked to his truck, he observed police vehicles parked behind buildings located across the street from where his truck was parked.  *Id.* at 1-2.  Shortly after Mason got into his truck and began to drive down Merchants Avenue, Officers Krodel and Cannata pulled up behind him in their police vehicle and tried to run him off the road by ramming his truck from behind which caused him to hit a fire hydrant as he attempted to pull into the parking lot of the Wequonnoc Apartments on North 5th Street in Taftville.  *Id.* at 1-2.  Mason had not violated any traffic laws and was not engaged in criminal activity when Officer Krodel and Cannata ran him off the road.  *Id.* at 1.  Prior to this incident, Mason had lodged a verbal complaint challanging the lawfulness of two of his prior arrests by Officers Krodel and Cannata.  *Id.* at 2.  Officers Krodel and Cannata were aware of the location of Mason's truck based on information provided by a confidential informant, who was upset with Mason.  *Id.*

Mason was dazed from the accident.  *Id.*  He stepped out of the truck with his hands raised and his cellphone in one hand recording the incident.  *Id.*  There were eight officers, who were either armed with pistols or a taser, and two police dogs, at the scene of the stop.  *Id.*  At

6:37 p.m., Officer Krodel tased Mason from a distance of seven to ten feet causing Mason to fall on the wet grass.  *Id.* at 1-2.  After being tased, Mason vomited and urinated on himself.  *Id.* at 3.

Officers Krodel and Cannata searched Mason's truck and seized a kitchen knife and a pipe, seized the truck, including items of personal property belonging to Mason and an ignition interlock device, and arrested him on the criminal offense of concealing a weapon in a motor vehicle.[1]  *Id.* at 2.  Either Officers Krodel and Cannata or other officers at the scene transported Mason to the Norwich Police Department.  *Id.* at 3.

After his arrival at the police department, Officer Krodel placed Mason in an unheated cell without toilet paper, food, a mattress or a blanket and confiscated his pants, shirt, and shoes.  *Id.*  The water from the sink in the cell was rusty.  *Id.*  Officer Krodel confined Mason in the cell from October 30, 2019 at 7:00 p.m. to October 31, 2019 at 9:00 a.m.  *Id.*

At the time of Mason's arrest and confinement at the Norwich Police Department, he had been diagnosed with kidney cancer.  *Id.*  Since this arrest, Mason has experienced headaches, back pain and left rib or kidney pain.  *Id.*

**Discussion**

The Court construes Mason's allegations to assert Fourth Amendment search and seizure and excessive force claims, a First Amendment retaliation claim, and a Fourteenth Amendment

---

[1] The State of Connecticut Judicial Branch website reflects that on October 30, 2019, Norwich police officers arrested Mason and charged him with the following six motor vehicle offenses: one count of improper use of a marker plate, license or registration; one count of illegal operation of motor vehicle while license or registration is under suspension; one count of passing in no passing zone; one count of reckless driving; one count of failure to drive on the right side of the road; and one count of illegal operation of a motor vehicle while under the influence of alcohol or drugs and charged him with the following three criminal offenses; one count of illegal possession of weapon in a motor vehicle; one count of interfering with an officer/resisting arrest; and one count of use or possession of drug paraphernalia.  Information regarding this arrest and pending criminal and motor vehicle charges may be found at: http://www.jud.ct.gov/judt.htm under Criminal/Motor Vehicle Case Look-up, Pending Case – By Docket Number using Case Numbers K21N-MV19-0201272-S and K21N-CR19-0161392-S (Last Visited March 26, 2021).

claim arising out of his conditions of confinement.  Mason seeks compensatory and punitive damages and injunctive relief.  *Id.* at 4.

**First Amendment**

To plead a First Amendment retaliation claim, a private citizen must allege that "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  To meet the third element, the plaintiff must establish either that the government retaliation "adversely affected" his speech or that he has suffered another concrete harm.  *Id.*

Mason alleges that on October 30, 2019, Officers Krodel and Cannata followed him in a police vehicle after he entered Merchants Street and rammed his truck for no apparent reason causing him to hit a fire hydrant.  He contends that Officers Krodel and Cannata forced his truck off the road in retaliation for verbal complaints that he had recently made against them concerning their involvement in his two prior arrests.  Second Am. Compl. at 2. These allegations plausibly meet the first two elements of a retaliation claim.  His complaints regarding the prior arrests amount to protected speech. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Officer Krodel specifically mentioned Mason's complaints in his police report documenting the October 30, 2019 arrest.  And the proximity between these events and the complaints made by Mason further support the inference that  the conduct was motivated by Mason's complaints.

With regard to the third element, Mason does not allege that he stopped criticizing

4

Officers Krodel or Cannata or the Norwich Police Department after the incident or that his free speech rights were otherwise chilled. Thus, he must allege another "concrete harm" resulting from the retaliation. On this issue, he asserts both harm to his person following the accident; personal injury resulting from being tased and property damage to his truck. Mason has asserted enough facts to state a plausible First Amendment retaliation claim against Officers Krodel and Cannata.

**Fourth Amendment – Searches and Seizures**

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is "reasonableness." *Riley v. California*, 573 U.S. 373, 381-82 (2014) (internal quotation marks and citation omitted).

The Supreme Court has held that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States,* 517 U.S. 806, 810 (1996). Traffic stops, therefore, must satisfy the Fourth Amendment's reasonableness limitation, which "requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009) (alterations and emphasis omitted).

An arrest constitutes a seizure under the Fourth Amendment and is not reasonable unless it is based on probable cause to believe that the individual has committed a crime. *Dunaway v.*

*New York*, 442 U.S. 200, 213 (1979). The Fourth Amendment permits an arrest without a warrant when "the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (quoting *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007)).

"As a general matter, '[t]he reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations.'" *United States v. Lambus*, 897 F.3d 368, 402 (2d Cir. 2018) (quoting *Grady v. North Carolina*, 575 U.S. 306, 310 (2015)). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

The Fourth Amendment also protects against unreasonable seizures of property. *Soldal v. Cook Cty, Ill.*, 506 U.S. 56, 62 (1992). "A 'seizure' of property ... occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Id.* at 61 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "To determine whether a seizure is unreasonable, a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine whether the totality of the circumstances justified the particular sort of seizure." *Carroll v. City of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013)

(alterations omitted; citation omitted; internal quotation marks omitted).

Mason alleges that neither Officer Cannata, nor Officer Krodel had probable cause to stop his vehicle because he had not engaged in a crime or a motor vehicle violation. Mason alleges further that neither officer had probable cause to search his truck, seize the kitchen knife or the pipe from his truck, seize his vehicle containing items of personal property, or to seize/arrest him without a warrant. The court will permit these Fourth Amendment claims of unreasonable searches and seizures to proceed against Officers Krodel and Cannata for further development of the record.

**Fourth Amendment - Excessive Force**

The test for determining whether a law enforcement official has used excessive force in violation of the Fourth Amendment in connection with an arrest requires a court to pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. This is an objective reasonableness test is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Mason alleges that there were eight members of the Norwich Police Department at the scene of the stop of his vehicle on October 30, 2019, including Officers Cannata and Krodel, and that seven officers had pulled their pistols and that Officer Krodel had pulled and used a taser gun. Generally, merely brandishing or pointing a gun, absent aggravating circumstances such as a death threat, does not constitute excessive force in violation of the Fourth Amendment.

*See Merrill v. Schell*, 279 F. Supp. 3d 438, 446 (W.D.N.Y. 2017) ("[T]he Second Circuit has never explicitly recognized an excessive-force claim in the absence of physical contact.... So threats alone, and brandishing weapons alone, do not clearly violate an arrestee's right."); *Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015) (collecting cases supporting proposition that "merely drawing" a weapon without firing it "does not constitute excessive force as a matter of law"). To the extent that Mason's allegations may be construed to assert a claim that Officer Cannata drew his firearm and pointed it at Mason at the scene of the stop, there are no facts to suggest that any aggravating circumstances were present. Thus, the claim of excessive force asserted against Officer Canatta is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Mason contends that Officers Cannata and Krodel followed him, rammed his truck and forced him into a fire hydrant because they were upset that he had complained about their prior conduct to Norwich Police Department officials. He further alleges that after his truck came to a stop, he did not resist or evade arrest. Rather, he exited his vehicle in a calm manner with his hands raised. The court concludes that Mason has asserted sufficient facts from which inferences could be drawn that the force used by Officers Cannata and Krodel in ramming his vehicle and forcing it off the road and the force used by Officer Krodel in tasing him after he exited his vehicle was objectively unreasonable. Accordingly, the court will permit these Fourth Amendment excessive force claims asserted against Officers Cannata and Krodel in connection with Mason's arrest on October 30, 2019 to proceed.

**Fourteenth Amendment – Conditions of Confinement**

Arrestees have a liberty interest in not being punished by the conditions of their

confinement before an adjudication of guilt. *See, e.g.*, *Lynch v. City of New York*, 952 F.3d 67, 77–78 (2d Cir. 2020) ("An arrestee who has not been adjudged guilty of a crime is of course entitled to due process and cannot properly be subjected to punishment.") (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[T]he proper inquiry [for a pretrial detainee] is whether conditions [of confinement] amount to punishment of the detainee" under the Due Process Clause of the Fourteenth Amendment)).  However, not every restriction "imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 537.

In evaluating whether the restrictive or harsh conditions violate the substantive due process rights of an arrestee under the Fourteenth Amendment, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538.  To determine punitive intent in the absence of an allegation that the defendant clearly expressed an intent to punish a detainee, a court may consider "'whether an alternative purpose to which [the condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69 (1963)). Thus, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539.  If, however, a restriction or condition is "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.*  Valid governmental objectives that could justify the imposition of restrictive conditions of confinement on pretrial detainees include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach

9

detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is detained." *Id.* at 540.

Mason's allegations plausibly state a claim that he was punished in violation of the Fourteenth Amendment when Officer Krodel placed him in his cell with no mattress or blanket, no food, and no shirt or pants, because such conduct was arbitrary or unrelated to a legitimate government interest in safety or security. *See, e.g.*, *Bell*, 441 U.S. at 539 ("If, however, a restriction or condition is "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment. . . ."); *Smart v. City of New York,* No. 08–CV–2203 (HB), 2009 WL 862281, at *10 (S.D.N.Y. Apr. 1, 2009) ("[D]eliberate denial of food, water or access to a restroom for fourteen hours [during confinement in cell at police precinct] is not reasonably related to any legitimate governmental purpose and thus the facts ... support an inference of punitive intent.") (citing cases)).; *Roundtree v. City of New York*, 778 F. Supp. 614, 623 (E.D.N.Y. 1991) ("Rather, it is not difficult to conclude that denial of access to a lavatory or to a telephone after arrest, as well as providing food poorly suited for human consumption, might well be "arbitrary or purposeless" and "a restriction or condition ... not reasonably related to a legitimate [governmental] goal" such that, accordingly, an intent to punish may be inferred."). Accordingly, the court will permit the Fourteenth Amendment claim that Officer Krodel subjected Mason to punitive conditions for fourteen hours from October 30, 2019 to October 31, 2019 to proceed for further development of the record.

Separate and distinct from claims arising out of or demonstrating punitive intent, the Second Circuit has also recognized conditions of confinement claims arising out of deliberate indifference. In *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit considered the

Fourteenth Amendment due process claims of twenty individuals who had been arrested and "subjected to appalling conditions of confinement while held pre-arraignment at Brooklyn Central Booking."[2] *Id.* at 21. The court held that to state a claim for allegedly unconstitutional conditions of confinement under the Fourteenth Amendment, a detainee must meet two prongs. *Id.* at 29. First, a detainee must allege that objectively "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health ... which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). Under this prong, a detainee may not be deprived of basic human needs such as "food, clothing, shelter, medical care, or reasonable safety." *Id.* (citation omitted).

Under the second prong, also called the "*mens rea*" prong, a detainee must assert either that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligent conduct by prison of police officials, however, does not meet the *mens rea* prong of the Fourteenth Amendment standard. *See id.* at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.").Mason claims that after confiscating his pants, shoes and shirt, Officer Krodel placed him in an unheated cell without a mattress, blanket, toilet paper, food or uncontaminated drinking water for fourteen

---

[2] Although the Second Circuit, in *Darnell,* did not address the distinction between pre-trial detainees and pre-arraignment detainees, it did address this distinction in *Shakir v. Stankye*, 805 F. App'x 35 (2d Cir. 2020). The court observed that the Fourteenth and not the Fourth Amendment governs conditions of confinement claims asserted by an arrestee who has not yet been arraigned. *Id.* at 40 (summary order) ("[W]e have treated even pre-arraignment conditions of confinement claims as arising under the Fourteenth Amendment.") (citing *Darnell*, 849 F.3d at 20, 29; *Weyant v. Okst*, 101 F.3d 845, 856–57 (2d Cir. 1996)).

hours. Mason alleges that he suffered from kidney cancer at the time of his fourteen-hour confinement in the cell. He contends that Officer Krodel was aware that the conditions would cause him emotional and physical discomfort. Second Am. Compl. at 3. Although Mason alleges that he suffered from kidney cancer at the time of his fourteen-hour confinement, he does not allege that he made Officer Krodel aware of this medical condition or that Officer Krodel should have been aware of the condition. Furthermore, Mason does not allege that any of the conditions to which he was subjected for a relatively short duration -- fourteen hours -- posed a substantial risk of harm to his health. Rather, he alleges that that conditions caused him discomfort. The court concludes that Mason's allegations regarding the conditions that he endured during his fourteen-hour confinement at the Norwich Police Department from October 30, 2019 to October 31 2019 do not plausibly meet the first component of the Fourteenth Amendment standard set forth in *Darnell*. To the extent Mason intended to assert a deliberate indifference claim with respect to the conditions of confinement, the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Injunctive Relief**

Mason seeks an "[i]njunction that Officer Krodel loses his badge or [is] demoted until he "attends two lectures pertaining to the effects of racism on an individual's physical and emotional wellbeing." Second Am. Compl. at 4. As a preliminary matter, Mason includes no facts regarding his race or that the alleged unlawful conduct of the defendants was motivated by racial animus.[3] Thus, the facts as alleged do not state a claim of a violation of Mason's federally

---

[3] The court notes that Mason included an allegation in the complaint that the defendants, Norwich law enforcement officials, had pulled him over and arrested him on October 30, 2019 for no apparent reason other than the fact that he was black and possibly due to a "minor infraction." ECF No. 1 at 5. The court dismissed that conclusory allegation on the ground that Mason has asserted no facts to

or constitutionally protected rights based on his race.  As such, the injunctive relief sought by Mason is unrelated to the underlying facts and claims alleged in the second amended complaint.  But injunctive relief is available only to redress injuries related to the conduct underlying the complaint.  *See, e.g.*, *DeBeers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter wholly outside the issues in the suit"); *Trowell v. Upstate Corr. Facility*, No. 9:16-CV-0639(MAD/TWD), 2016 WL 7156559, at *7 (N.D.N.Y. Dec. 7, 2016) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." (citation and internal quotation marks omitted)).  Moreover, a plaintiff has no right to have a defendant punished or disciplined.  *See Lopez v. Semple*, No. 3:18-CV-1907 (KAD), 2019 WL 109339, at *5 (D. Conn. Jan. 4, 2019) ("This Court cannot order disciplinary action against the Defendants even should a violation by those Defendants be proven.") (citing *Osuch v. Gregory*, 303 F. Supp. 2d 189, 194 (D. Conn. 2004)); *Joyce v. Hanney*, No. 3:05cv1477(WWE), 2009 WL 563633, at *9 (D. Conn. Mar. 4, 2009) ("Plaintiff does not have a constitutionally protected right to have any defendant disciplined or prosecuted.") (citing *S. v. D.,* 410 U.S. 614, 619 (1973)).  Accordingly, the request for injunctive relief, that Officer Krodel be demoted or disciplined is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

---

support his contention that the actions of the defendants were undertaken in an intentionally discriminatory manner or were motivated by racial animus.  *See* IRO, ECF No. 10, at 15-17.  Mason included no allegations regarding his race in the first amended complaint or the present second amended complaint.  Thus, the claim is deemed abandoned.  *See* ECF No. 14.

**ORDERS**

In accordance with the foregoing analysis, the court enters the following orders:

(1) The Fourth Amendment excessive force claim based upon Officer Cannata drawing his firearm and pointing it at Mason at the scene of the stop, the Fourteenth Amendment deliberate indifference to conditions of confinement claim based upon the conditions that Mason endured during his fourteen-hour confinement at the Norwich Police Department from October 30, 2019 to October 31 2019, and the request for injunctive relief seeking to suspend or demote Officer Krodel are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The First Amendment retaliation claim and the Fourth Amendment claims detailed above will proceed against Officers Krodel and Cannata in their individual capacities, and the Fourteenth Amendment claim that the conditions that Mason endured during his confinement at the Norwich Police Department constituted punishment will proceed against Officer Krodel in his individual capacity.

**(2)** The Clerk shall mail a copy of the second amended complaint, this order, and a waiver of service of process request packet to each defendant in his individual capacity at the Norwich Police Department, 70 Thames Street, Norwich, Connecticut 06360. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the requests. If either defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants Krodel and Cannata shall file their response to the second amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose

to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 5, 2021.** Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed by **November 5, 2021.**

**(6)** If Mason changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mason should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient. If Mason has more than one pending case, he should indicate all case numbers in the notification of change of address. Mason should also notify the attorney for the defendants of his new address.

**(7)** Local Court Rule 5(f) provides that discovery requests are not to be filed with the court. Therefore, discovery requests must be served on defendants' counsel by regular mail.

SO ORDERED at Bridgeport, Connecticut this 5th day of April 2021.

_____/s/_____
Kari A. Dooley
United States District Judge